**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MICHELLE BARKER, SUSANNA GRIGOLI, and CARRIE CARTER on behalf of themselves and all others similarly situated, | Case No. |
| Plaintiffs, | **Demand for Jury Trial** |
| v. | |
| NESTLE PURINA PETCARE COMPANY, | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Plaintiffs Michelle Barker, Susanna Grigoli, and Carrie Carter (collectively, "Plaintiffs"), acting on behalf of themselves and all others similarly situated ("Class Members"), bring this action for damages and equitable relief against Nestle Purina Petcare Company ("Defendant").

**NATURE OF THE CASE**

1.      Many dogs suffer allergic reactions to foods containing grains, such as corn, wheat, or soy and many dog owners are willing to pay a premium for "grain free" products to alleviate their pets' allergies or otherwise provide health benefits associated with a grain free diet. Therefore, having these ingredients omitted from their pet foods is an important characteristic to consumers, including Plaintiffs and Class Members.

2.      Defendant purports to design, manufacture, distribute, market, and sell limited-ingredient pet foods, including (1) Purina Pro Plan Adult Sensitive Skin & Stomach Salmon & Rice Formula; (2) Purina Pro Plan Adult Sensitive Skin & Stomach Lamb & Oat Meal Formula;

and (3) Purina Beneful Grain Free with Farm-Raised Chicken accented with Blueberries, Pumpkin and Spinach (collectively, the "Subject Foods").

3.      Consumers pay a premium for the Subject Foods because they are specifically represented to be "grain free" (Beneful) or made with "No corn, wheat or soy" (Pro Plan).

4.      However, independent testing of the Subject Foods confirms that these representations are false.  Both Pro Plan formulas contain significant amounts of wheat, while the Beneful formula contains significant amounts of soy.

5.      Plaintiffs bring this suit on behalf of themselves and similarly situated consumers who purchased the Subject Foods. Plaintiffs and Class Members were damaged because they would not have purchased (or would not have paid a premium) for Defendant's dog food had they known the true facts regarding the Subject Foods' ingredients.

## PARTIES

6.      Plaintiff Michelle Barker is a citizen of Georgia residing in Milner.

7.      Plaintiff Susanna Grigoli is a citizen of Florida residing in Port Richey.

8.      Plaintiff Carrie Carter is a citizen of Virginia residing in Ripplemead.

9.      Defendant Nestle Purina Petcare Company is a for-profit corporation, organized and existing under the laws of the State of Missouri. Defendant has its principal office in St. Louis, Missouri. Defendant designs, manufactures, and markets the Subject Foods and sells them through third-party retailers such as Petco, Walmart, and Chewy.com throughout the United States.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and some of the members of the proposed class are citizens of states different from the Defendant.

11.     Defendant has sufficient minimum contacts with Missouri to be subject to this Court's personal jurisdiction.  Defendant is organized and existing under the laws of the State of

Missouri and has its principal office in St. Louis, Missouri.  Defendant also intentionally avails itself of the markets within Missouri through the promotion, sale, marketing, and distribution of the Subject Foods and numerous other products, which renders this Court's exercise of jurisdiction necessary and proper.

12.     In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District and Defendant is headquartered and transacts business in this District.

## FACTUAL ALLEGATIONS

### *Defendant's "Grain Free" and "No Corn, Wheat, or Soy" Representations*

13.     Defendant purports to design, manufacture, distribute, market, and sell various limited-ingredient pet foods.  These include:



Purina Pro Plan Adult Sensitive Skin & Stomach Salmon & Rice Formula;



Purina Pro Plan Adult Sensitive Skin & Stomach Lamb & Oat Meal Formula; and



Purina Beneful Grain Free with Farm-Raised Chicken Accented with Blueberries,  Pumpkin  and Spinach.

14.     Defendant markets both Pro Plan "Sensitive Skin & Stomach" formulas as "easily digestible and gentle on the digestive system" and prominently states on their labels, "NO CORN, WHEAT OR SOY."

15.     Defendant similarly states on the label for Purina Beneful Grain Free with Farm-Raised Chicken Accented with Blueberries, Pumpkin and Spinach that that product is "Grain Free" and that "No Corn, Wheat or Gluten are in this recipe."

16.     Mislabeling in the pet food industry is a well-known and widespread problem.[1]

17.     Plaintiffs' counsel hired an expert to test whether Defendant accurately represented the contents of the Subject Foods.

18.     The results from this test revealed that both Pro Plan formulas contain significant amounts of wheat, while the Beneful product contains significant amounts of soy.

19.     On July 19, 2021, Plaintiffs' counsel sent Defendant a letter outlining Defendant's misconduct and demanding that Defendant provide Plaintiffs and all similarly situated consumers replacement dog foods that fully conform to Defendant's prior representations, or otherwise provide Plaintiffs and all similarly situated consumers full refunds of their purchase price. Plaintiffs' counsel sent a second demand letter on July 29, 2021.  Defendant has not complied with Plaintiffs' demands.

20.     This suit seeks to remedy the wrongs for Plaintiffs and Class Members who were deceived by Defendant's material misrepresentations and omissions.

21.     Reasonably relying on Defendant's material misrepresentations and omissions, Plaintiffs and Class Members paid a significant price premium to obtain the benefits of a limited-ingredient product.  For instance, a 23-pound bag of Purina Beneful Grain Free with Farm-Raised Chicken Accented with Blueberries,  Pumpkin  and Spinach retails for $29.42[2] while a 42-pound bag of Purina "Dog Chow Complete Adult with Real Chicken Dry Dog Food" is only $24.99.[3] However, Plaintiffs and the Class Members did not receive the product they were promised because Defendant misrepresented the ingredients of Subject Foods to extract a price premium from unsuspecting consumers.

---

[1] *See, e.g. infra* ¶28 ("By 2018, research into pet food products' label claims and the presence of non-conforming ingredients intensified. Out of the 40 products analyzed in one study, the ingredients of only 10 products correctly matched their label.")

[2]  https://www.chewy.com/purina-beneful-grain-free-real-farm/dp/143867  (last  visited August 4, 2021).

[3] https://www.chewy.com/dog-chow-complete-adult-real-chicken/dp/127736 (last visited August 4, 2021).

### *Defendant's Misrepresentations and Omissions are Material to Consumers*

22.     Pet foods vary in their quality of ingredients, formula, manufacturing processes, and inspection quality. Pet owners who purchase limited-ingredient products pay a premium to alleviate their pets' allergies and to provide various health and nutritional benefits associated with a limited-ingredient diet. Notably, grain allergies are more common among certain dog breeds than others.

23.     In addition, pet owners are willing to pay a premium for dog food with premium ingredients and reasonably expect the product to conform to the ingredients as listed by the manufacturer on its packaging.

24.     Accordingly, Defendant's misrepresentations and omissions regarding the ingredients in the Subject Foods are material to consumers.

### *Academic Research Confirms Pet Food Manufacturers*
### *Sell Non-Conforming Products*

25.     Before December 2014, little or no peer-reviewed academic research was published concerning the accuracy of label claims with respect to ingredients present in canine foods.

26.     In December 2014, a group of researchers found that only 18% of the pet food samples they tested completely matched the label claims with respect to the content of animal by-products. Thus, 82% of the products analyzed by the researchers contained non-conforming ingredients when compared to their label claims. The December 2014 study hypothesized that raw materials used in the preparation of the canned food products contained multiple protein types and may have contributed to contamination.[4]

---

[4] *See* Ming-Kun Hsieh, *et al.*, *Detection of undeclared animal by-products in commercial canine canned foods: Comparative analyses by ELISA and PCR-RFLP coupled with slab gel electrophoresis or capillary gel electrophoresis*, J Sci Food Agric. 2016 Mar 30; 96(5):1659-65 (completed December 31, 2014).

27.     In 2016, another study investigated the issue of whether vegan pet food contained non-conforming mammalian ingredients.[5] Vegan pet foods should contain no mammalian proteins or ingredients. The study found that half of the products tested contained non-conforming mammalian DNA in the products and suggested that manufacturers are ultimately responsible for maintaining adequate end product quality control to prevent such discrepancies between their ingredients and label claims.

28.     By 2018, research into pet food products' label claims and the presence of non-conforming ingredients intensified. Out of the 40 products analyzed in one study, the ingredients of only 10 products correctly matched their label.[6] Of the remaining 30 products, 5 did not contain the declared animal species ingredients and 23 others revealed the presence of undeclared animal species. Two of the products' labels were vague and their accuracy was indeterminable. This 2018 study found that mislabeling was an especially widespread problem in pet foods used for "elimination diets" (i.e., used to investigate food allergies). In this 2018 study, researchers suggested that manufacturers should pay particular attention to both the selection of raw material suppliers and the production processes for pet food due to the high risk of contamination.

29.     A second 2018 study (conducted in Europe) tested 11 canine and feline limited ingredient wet food products and found the presence of non-conforming ingredients in 54% of the products.[7] This study further suggested other peer-reviewed studies found that 80% of the dry foods analyzed contained non-conforming products and that the high rate of cross-contamination in dietic limited-antigen wet canine and feline foods may be due to inadequate quality-control

[5] See K. Kanakubo, et al., Determination of mammalian deoxyribonucleic acid (DNA) in commercial vegetarian and vegan diets for dogs and cats, Journal of Animal Physiology & Animal Nutrition, 2017 Feb;101 (1):70–74 (March 3, 2016).

[6] See Rebecca Ricci, et al., Undeclared animal species in dry and wet novel and hydrolyzed protein diets for dogs and cats detected by microarray analysis, BMC Veterinary Research volume 14, Article number: 209 (2018).

[7] See Elena Pagani, et al., Cross-contamination in canine and feline dietetic limited-antigen wet diets, BMC Vet Res. 2018; 14: 283 (September 12, 2018).

practices in the pet food industry. The authors opined that the pet food industry has a legal obligation to produce safe food for consumers. The researchers hypothesized that pet food contamination occurs at two different points during manufacturing: 1) in the production of the feed materials (sometimes attributable to suppliers), and 2) during the actual production of the pet food via cross-contamination during manufacturing production lines, improper equipment cleaning, or other production deficiencies.

30.     In 2018, a third study summarized 18 studies, articles, and an abstract published between July 2017 and January 2018 related to pet food ingredient testing.[8] The authors concluded that the mislabeling of pet food appears rather "common" in the limited ingredient diet products that are proposed for elimination diets. They also found that unexpected added ingredients are more frequently detected than those missing from the label.

31.     Since 2014, virtually all scholarly researchers have found that pet food sold to consumers frequently contains non-conforming ingredients, and significant discrepancies between pet food products' labeling and their actual ingredients appears to be commonplace among pet food manufacturers.

### Plaintiffs' Experiences with the Subject Foods

32.     Plaintiff Michelle Barker is a resident and citizen of Milner, Georgia who purchased Purina Pro Plan Adult Sensitive Skin & Stomach Salmon & Rice Formula on a monthly basis starting in approximately 2019 and fed it to her dog, Taloc. Plaintiff Barker also occasionally purchased Purina Pro Plan Adult Sensitive Skin & Stomach Lamb & Oat Meal Formula during the same time period. Plaintiff Barker purchased the Subject Foods from various local retailers (including Aikens Feed & Seed locations in Barnesville, Georgia and Griffin, Georgia and Tractor Supply in Griffin, Georgia) and online retailers (including chewy.com).

---

[8] *See* Thierry Olivry and Ralf S. Mueller, *Critically Appraised topic on adverse food reactions of companion animals (5): discrepancies between ingredients and labeling in commercial pet foods*, BMC Vet Res. 2018 Jan 22;14(1):24 (January 22, 2018).

33.     Prior to purchasing the Subject Foods, Plaintiff Barker read Defendant's representation that the product contains "NO CORN, WHEAT OR SOY" on the product's packaging and specifically relied on this representation in deciding to purchase the Subject Food.

34.     Plaintiff Barker's dog, Taloc, has allergies and Plaintiff Barker researched the benefits of a grain-free diet and learned that eliminating grains could help Taloc's allergy symptoms. In approximately 2019, Plaintiff Barker began feeding Taloc a raw diet and his allergies improved.  However, because it was difficult to maintain a raw diet for a dog of Taloc's size (140 lbs.), Plaintiff Barker looked for a grain-free dry food alternative.  Plaintiff Barker spent a premium price to purchase the Subject Foods due to Defendant's grain-free claims, but stopped purchasing the Subject Foods in 2021 because Taloc's allergy symptoms worsened.

35.     Plaintiff Barker would not have purchased the Subject Foods if she had been aware that the "NO CORN, WHEAT OR SOY" representations were not true, or alternatively, she would have paid less for the Subject Foods. If the Subject Foods actually contained "NO CORN, WHEAT OR SOY," she would consider buying them again in the future.

36.     Plaintiff Susanna Grigoli is a resident and citizen of Port Richey, Florida who purchased Purina Beneful Grain Free with Farm-Raised Chicken Accented with Blueberries, Pumpkin and Spinach from approximately 2020 to 2021 and fed it to her dog, Loulou. Plaintiff Barker purchased the Subject Foods from a Publix grocery store located in Port Richey, Florida.

37.     Prior to purchasing the Subject Foods, Plaintiff Grigoli read Defendant's representations on the product packaging stating that the product was "Grain Free" and specifically relied on the representation in deciding to purchase the Subject Food. Plaintiff Grigoli spent a premium price to purchase the Subject Food due to its grain-free claims.

38.     Plaintiff Grigoli's dog, Loulou, suffered from allergies and a veterinarian recommended that she switch to a grain-free diet. In approximately 2020, Plaintiff Grigoli began feeding Loulou Purina Beneful Grain Free with Farm-Raised Chicken Accented with Blueberries, Pumpkin and Spinach.  When Loulou's allergy symptoms did not improve, Plaintiff Grigoli switched to another diet.

39.     Plaintiff Grigoli would not have purchased the Subject Food if she had been aware that its "Grain Free" representations were not true, or alternatively, she would have paid less for the dog food. If the Subject Food were actually "Grain Free," she would consider buying it again in the future.

40.     Plaintiff Carrie Carter is a resident and citizen of Ripplemead, Virginia who has purchased Purina Beneful Grain Free with Farm-Raised Chicken Accented with Blueberries, Pumpkin and Spinach for his dog, Reese. Plaintiff Carter purchased the Subject Food from a local retailer (Dollar General) in 2021.

41.     Prior to purchasing the Subject Food, Plaintiff Carter read Defendant's representation that the product is "Grain Free" on the product's packaging and specifically relied on this representation in deciding to purchase the Subject Food. Plaintiff Carter spent a premium price to purchase the Subject Food due to its grain-free claims.

42.     Plaintiff Carter researched the benefits of a grain-free diet and thought it would be beneficial for her dog. Plaintiff Carter spent a premium price to purchase the Subject Food due to its grain-free claims, but stopped purchasing the Subject Foods when Reese started to suffer from nausea and diarrhea.

43.     Plaintiff Carter would not have purchased the Subject Food if she had been aware that its "Grain Free" representations were not true, or alternatively, she would have paid less for the dog food. If the Subject Food were actually "Grain Free," she would consider buying them again in the future.

## CLASS ACTION ALLEGATIONS

44.     Plaintiffs bring this action on behalf of themselves and a class ("Nationwide Class" or "Class") defined as follows:

> All persons residing in the United States who, during the maximum period of time permitted by law, purchased the Subject Foods primarily for personal, family or household purposes, and not for resale.

45.     Plaintiff Michelle Barker further brings this action on behalf of herself and the members of the following subclass ("Georgia Subclass"):

> All persons residing in Georgia who, during the maximum period of time permitted by law, purchased the Subject Foods primarily for personal, family or household purposes, and not for resale.

46.     Plaintiff Susanna Grigoli further brings this action on behalf of herself and the members of the following subclass ("Florida Subclass"):

> All persons residing in Florida who, during the maximum period of time permitted by law, purchased the Subject Foods primarily for personal, family or household purposes, and not for resale.

47.     Plaintiff Carrie Carter further brings this action on behalf of herself and the members of the following subclass ("Virginia Subclass"):

> All persons residing in Virginia who, during the maximum period of time permitted by law, purchased the Subject Foods primarily for personal, family or household purposes, and not for resale.

48.     Plaintiffs reserve the right to amend the Class and Subclass definitions at a later date as necessary to conform with facts learned through discovery.

49.     Specifically excluded from the Class and Subclasses are (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

50.     As used herein, "Class Members" shall mean and refer to the members of the Nationwide Class and all Subclasses, including each named Plaintiff.

51.     Plaintiffs seek only damages and equitable relief on behalf of themselves and the Class Members. Plaintiffs disclaim any intent or right to seek any recovery in this action for

personal injuries, wrongful death, or emotional distress suffered by themselves and/or the Class Members.

52.    <u>Numerosity</u>: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

53.    <u>Typicality</u>: The claims of the representative Plaintiffs are typical in that Plaintiffs, like all Class Members, purchased the Subject Foods that were manufactured and distributed by Defendant. Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that, *inter alia*, they purchased a product that contained ingredients that was marketed and advertised not to contain. Furthermore, the factual bases of Defendant's misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to Plaintiffs and all Class Members.

54.    <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiffs and Class Members that predominate over any individual questions. These common legal and factual issues include the following:

    a.   Whether the Subject Foods contain wheat and/or soy;

    b.   Whether Defendant's representations were false and/or misleading;

    c.   Whether Defendant knowingly or negligently omitted that the products contained wheat and/or soy and were not suitable for a grain free diet;

    d.   Whether Defendant expressly warranted that the Subject Foods would conform to its limited ingredient representations;

    e.   Whether Defendant breached its express and implied warranties by making the representation above when the products contained wheat and/or soy;

    f.   Whether Defendant was unjustly enriched by consumers paying a price premium for products that were sold as marketed;

g. Whether Defendant's actions as described above violated the various state consumer protection laws as alleged herein;

h. Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, pay damages, and pay treble damages as a result of the above-described practices.

55.     <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

56.     <u>Predominance and Superiority</u>: Plaintiffs and Class Members have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## CAUSES OF ACTION

### COUNT I

### BREACH OF EXPRESS WARRANTY

**(On Behalf of the Nationwide Class)**

57.     Plaintiffs bring this count on behalf of themselves and the Nationwide Class and repeat and re-allege all previous paragraphs, as if fully included herein.

58.     Defendant sold and Plaintiffs and Class Members purchased the Subject Foods.

59.     Defendant represented in its marketing, advertising, and promotion of the Subject Foods that the products were "grain free" (Beneful) or made with "No Corn, Wheat or Soy" (Pro Plan).

60.     Defendant made such representations to induce Plaintiffs and Class Members to purchase its food.

61.     The representations that the Subject Foods were "grain-free" (Beneful) or made with "No Corn, Wheat or Soy" (Pro Plan) was a part of the basis of the bargain between Defendant and Plaintiffs.

62.     The Subject Foods did not conform to Defendant's representations and warranties because they contained significant amounts of wheat and/or soy.

63.     Within a reasonable time after Plaintiff and other similarly situated consumers knew or should have known of such failure to conform, Plaintiff's counsel sent two demand letters to Defendant. The demand letters outlined Defendant's misconduct, including that Defendant misrepresented the contents of the Subject Foods. Defendant has not provided Plaintiffs and all similarly situated consumers replacement dog foods that fully conform to Defendant's prior representations, or provided Plaintiffs and all similarly situated consumers full refunds of their purchase price.

64.     As a direct and proximate result of Defendant's breaches of its express warranty and failure of Defendant's dog food to conform to its representations as warranted, Plaintiffs and Class Members have been damaged in that they did not receive the product as specifically warranted and/or would not have purchased (or paid a premium) for the Subject Foods that did not conform to Defendant's warranties.

## COUNT II

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (On Behalf of the Nationwide Class)

65.     Plaintiffs bring this count on behalf of themselves and the Nationwide Class and repeat and re-allege all previous paragraphs, as if fully included herein.

66.     Defendant sold and Plaintiffs and Class members purchased the Subject Foods.

67.     When sold by Defendant, the Subject Foods were not merchantable, did not pass without objection in the trade under the label description, were not of adequate quality within that description, were not fit for the ordinary purposes for which such goods are used, and did not conform to the promises or affirmations of fact made on its container or label.

68.     Within a reasonable time after Plaintiffs and other similarly situated consumers knew or should have known of such failure to conform, Plaintiffs' counsel sent two demand letters to Defendant. The demand letters outlined Defendant's misconduct, including that Defendant misrepresented the contents of the Subject Foods. Defendant has not provided Plaintiffs and all similarly situated consumers replacement dog foods that fully conform to Defendant's prior representations, or provided Plaintiffs and all similarly situated consumers full refunds of their purchase price.

69.     Because the products contain significant amounts of soy and/or wheat, they were neither "grain-free" (Beneful) or made with "No Corn, Wheat or Soy" (Pro Plan).

70.     As a direct result of the Subject Foods being unfit for their intended purpose and/or otherwise not merchantable, Plaintiffs and Class Members were damaged because they would not have purchased (or paid a premium) for Defendant's dog food had they known the true facts regarding the ingredients.

## COUNT III

## UNJUST ENRICHMENT

### (On Behalf of the Nationwide Class)

71.     Plaintiffs bring this count on behalf of themselves and the Class and repeat and re-allege all previous paragraphs, as if fully included herein.

72.     Plaintiffs and Class Members conferred benefits on Defendant by purchasing the Subject Foods at a premium price.

73.     Defendant has knowledge of such benefits.

74.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs and Class Members purchasing the Subject Foods. Defendant retaining this money under these circumstances is unjust and inequitable because Defendant falsely and misleadingly omitted that the products contained significant amounts of wheat and/or soy while representing that the Subject Foods were  "Grain Free" (Beneful) or made with "No Corn, Wheat or Soy" (Pro Plan). Such omissions and misrepresentations caused injuries to Plaintiffs and Class Members because they would not have purchased (or paid a premium) for the Subject Foods had they known the true facts regarding their ingredients.

75.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and Class Members for unjust enrichment, as ordered by the Court.

**COUNT IV**

**<u>MISSOURI MERCHANDISING PRACTICES ACT</u>**

**Mo. Stat. §407.020(1), et seq.**

**(On Behalf of Nationwide Class)**

76.     Plaintiffs bring this count on behalf of themselves and the Class and repeat and re-allege all previous paragraphs, as if fully included herein.

77.     The Missouri Merchandising Practices Act provides:

The act, … by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in *or from* the state of Missouri, is defined to be an unlawful practice.

Mo. Stat. §407.020 (emphasis added)

78.     Plaintiffs, Class Members, and Defendant are "persons" as defined in Mo. Stat. §407.020(1).

79.     Mo. Stat. § 407.025 in relevant part provides:

> Any person who purchases or leases merchandise primarily for personal, family or
> household purposes and thereby suffers an ascertainable loss of money or property,
> real or personal, as a result of the use or employment by another person of a method,
> act or practice declared unlawful by section 407.020, may bring a private civil
> action in either the circuit court of the county in which the seller or lessor resides
> or in which the transaction complained of took place, to recover actual damages

80.   Plaintiffs and the Class Members purchased goods or services primarily for personal, family, or household purposes.

81.   As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendant relating to the product labels, ingredients, and manufacturing oversight of the Subject Foods misled consumers acting reasonably.

82.   Plaintiffs and Class Members suffered injuries in fact as a result of Defendant's actions as set forth herein because they purchased the Subject Foods in reliance on Defendant's false and misleading labeling claims concerning, among other things, the products' ingredients. Plaintiffs and the Class Members acted as reasonable consumers in light of all circumstances.

83.   Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising because Defendant advertised the Subject Foods in a manner that was untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

84.   Plaintiffs and the Class Members were damaged because they would not have purchased (or paid a premium) for the Subject Foods had they known the true facts regarding their ingredients.

85.   Plaintiffs further seeks an award of reasonable attorneys' fees and costs, and any other relief that the Court deems proper.

**COUNT V**

**GEORGIA FAIR BUSINESS PRACTICES ACT**

**Ga. Code Ann. § 10-1-393, et seq.**

**(On Behalf of Georgia Subclass)**

86.    Plaintiff Barker brings this count on behalf of herself and the Georgia Subclass and repeats and re-alleges all previous paragraphs, as if fully included herein.

87.    Ga. Code Ann. § 10-1-393 declares unlawful "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce…." Prohibited practices include but are not limited to "passing off goods or services as those of another," Ga. Code Ann. § 10-1-393(b)(1);  "Causing actual confusion or actual misunderstanding as to the source, sponsorship, approval, or certification of goods or services," Ga. Code Ann. § 10-1-393(b)(2);    "Representing that goods or services have sponsorship, approval, characteristics, ***ingredients***, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have," Ga. Code Ann. § 10-1-393(b)(5) (emphasis added); "Representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another; Ga. Code Ann. § 10-1-393(b)(7); and "Advertising goods or services with intent not to sell them as advertised; Ga. Code Ann. § 10-1-393(b)(9)

88.    Ga. Code Ann, § 10-1-399 in relevant part provides:

Any person who suffers injury or damages as a result of a violation of Chapter 5B of this title, as a result of consumer acts or practices in violation of this part, as a result of office supply transactions in violation of this part or whose business or property has been injured or damaged as a result of such violations may bring an action … against the person or persons engaged in such violations under the rules of civil procedure to seek equitable injunctive relief and to recover his or her general and exemplary damages sustained as a consequence thereof in any court having jurisdiction over the defendant….

89.    Plaintiff Barker and the Georgia Subclass Members purchased goods or services primarily for personal, family, or household purposes.

90.     As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendant relating to the product labels, ingredients, and manufacturing oversight of the Subject Foods misled consumers acting reasonably.

91.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

92.     The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff Barker and the Georgia Subclass members that they could not reasonably avoid

93.     As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff Barker and the Georgia Subclass members have suffered injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Subject Foods at a substantial premium when they did not live up to Defendant's representations.

94.     Plaintiff Barker and the Georgia Subclass were damaged because they would not have purchased (or paid a premium) for the Subject Foods had they known the true facts regarding their ingredients.

95.     Plaintiff Barker and the Georgia Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorney's fees.

96.     On July 19. 2021, Plaintiff Barker sent Defendant a demand letter pursuant to Ga. Code Ann. § 10-1-399(b) outlining Defendant's misconduct and notifying Defendant that it had misrepresented the Subject Foods' ingredients. Defendant did not respond with a written tender of settlement within 30 days.

**COUNT VI**

**FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**

**Fla. Stat. §501.201, et seq.**

**(On Behalf of Florida Subclass)**

97.     Plaintiff Grigoli brings this count on behalf of herself and the Florida Subclass and repeats and re-alleges all previous paragraphs, as if fully included herein.

98.     Fla. Stat §501.204 declares unlawful "unfair methods of competition, unconscionable acts or practices and unfair or deceptive acts or practices in the conduct of any trade or commerce."

99.     Plaintiff Grigoli and Florida Subclass members are "consumers" as defined by Fla. Stat. § 501.203.

100.    Defendant advertised, offered, or sold goods in Florida and engaged in trade or commerce directly or indirectly affecting the people of Florida.

101.    Defendant engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla. Stat. § 501.204(1).

102.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

103.    Had Defendant disclosed to Plaintiff Grigoli and the Florida Subclass members material facts, including but not limited to, that in producing the Subject Foods, it knowingly used wheat and/or soy, Plaintiff Grigoli and the Florida Subclass would not have paid such a premium price. Alternatively, Plaintiffs would have purchased a different product. Instead, because Defendant represented the Subject Foods contained no wheat or soy, Plaintiff Grigoli and the Florida Subclass members purchased Defendant's dog food. Plaintiff Grigoli and the Florida Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

104.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff Grigoli and the Florida Subclass members have suffered injury, ascertainable losses of

money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain regarding the Subject Foods.

105.    Plaintiff Grigoli and the Florida Subclass members were damaged because they would not have purchased (or paid a premium) for the Subject Foods had they known the true facts regarding their ingredients.

106.    Plaintiff Grigoli and the Florida Subclass members seek all monetary and non-monetary relief allowed by law, including actual or nominal damages under Fla. Stat. § 501.211(2); reasonable attorneys' fees and costs, under Fla. Stat. § 501.2105(1); and any other relief that is just and proper.

**COUNT VII**

**<u>VIRGINIA CONSUMER PROTECTION ACT</u>**

**Va. Code Ann. § 59.1-196, et seq.**

**(On Behalf of the Virginia Subclass)**

107.    Plaintiff Carter brings this count on behalf of herself and the Virginia Subclass and repeats and re-alleges all previous paragraphs, as if fully included herein.

108.    Va. Code Ann. § 59.1-200 prohibits "fraudulent acts or practices committed by a supplier in connection with a consumer transaction," including: misrepresenting goods or services as those of another, §59.1-200(A)(1); misrepresenting the source, sponsorship, approval, or certification of goods or services, §59.1-200(A)(2); misrepresenting that goods or services have certain quantities, characteristics, ***ingredients***, uses, or benefits, §59.1-200(A)(5) (emphasis added); misrepresenting that goods or services are of a particular standard, quality, grade, style, or model, §59.1-200(A)(6); advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised, §59.1-200(A)(8); and using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction, §59.1-200(A)(14).

109.   By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by misrepresenting that Subject Foods did not contain wheat or soy, when, in fact, the Subject Foods did contain wheat and/or soy.

110.   Defendant's business practices of marketing, advertising, and promoting the Subject Foods in a misleading, inaccurate, and deceptive manner constitutes unconscionable commercial practices, deception, and misrepresentations, and, thus, results in multiple, separate violations of Va. Code Ann. § 59.1-200(A).

111.   In marketing, advertising, and promoting the Subject Foods to consumers, including Plaintiff Carter and members of the Virginia Subclass, Defendant made the material misrepresentations and omissions set forth in this Complaint throughout the United States, including in the State of Virginia.

112.   Defendant's false, misleading, and deceptive statements and representations of fact were and are directed at consumers.

113.   Defendant's false, misleading, and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

114.   Defendant's false, misleading, and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

115.   The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics, ingredients, benefits, quality, and nature of the Subject Foods to induce consumers to purchase the same, and/or to pay a premium for the same.

116.   Defendant's unconscionable commercial practices, false promises, misrepresentations, and omissions set forth in this Complaint are material in that they relate to matters which reasonable persons, including Plaintiff Carter and members of the Virginia Subclass, would attach importance in their purchasing decisions.

117.   Plaintiff Carter and members of the Virginia Subclass were injured because: (a) they would not have purchased Subject Foods, or would not have purchased Subject Foods on the

same terms, had they known that the products in fact contained wheat and/or soy; (b) they paid a price premium for Subject Foods based on Defendant's false and misleading statements; and (c) the Subject Foods did not have the characteristics and benefits promised because it contained wheat and/or soy.  As a result, Plaintiff Carter and the Virginia Subclass have been damaged in an amount to be proven at trial, but not less than either the purchase price of the Subject Foods or the difference in value between the Subject Foods as advertised and the Subject Foods as actually sold.

118.   On behalf of herself and other members of Virginia Subclass, Plaintiff Carter seeks to enjoin the unlawful acts and practices described herein, to recover her actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek a judgment against Defendant, as follows:

a.   For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representative of the Class and Subclasses and Plaintiffs' attorneys as Class Counsel to represent the Class members;

b.   For an order declaring that Defendant's conduct violated the statutes referenced herein;

c.   For an order finding in favor of Plaintiffs and the Class and Subclasses on all counts asserted herein;

d.   For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.   For prejudgment interest on all amounts awarded;

f.   For an order of restitution and all other forms of equitable monetary relief; and

g.   For an order awarding Plaintiffs and the Class and Subclasses their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Dated: August 30, 2021                    Respectfully submitted,

*/s/ John F. Edgar*
John F. Edgar
**EDGAR LAW FIRM LLC**
2600 Grand Blvd., Suite 400
Kansas City, MO 64108
Telephone: (816) 531-0033
Email: jfe@edgarlawfirm.com

Jeffrey S. Goldenberg*
Todd Naylor*
**GOLDENBERG SCHNEIDER, LPA**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Telephone: (513) 345-8291
tnaylor@gs-legal.com
jgoldenberg@gs-legal.com

Gary E. Mason*
Danielle L. Perry*
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Avenue NW, Suite 305
Washington, DC 20016
Telephone: (202) 640-1160
gmason@masonllp.com
dperry@masonllp.com

Charles E. Schaffer*
David C. Magagna Jr.*
**LEVIN, SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

Jonathan Shub*
Kevin Laukaitis*
**SHUB LAW FIRM, LLC**
134 Kings Hwy. E., 2nd Floor
Haddonfield, NJ 08033
Telephone: 856-772-7200
jshub@shublawyers.com
klaukaitis@shublawyers.com

*Pro Hac Vice to be filed*
**_Attorneys for Plaintiffs and the Class_**