# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MICHELLE BARKER, *on behalf of herself and all those similarly situated*, <br><br> Plaintiff, <br><br> vs. <br><br> NESTLE PURINA PETCARE COMPANY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) Case No. 4:21-cv-01075-MTS |

## MEMORANDUM AND ORDER

Before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, Doc. [27]. *See* Fed. R. Civ. P. 12(b)(1), (6). The motion is fully briefed and ready for adjudication. For the reasons explained herein, the Court will grant the Motion in part and deny it in part.

**I. Background**

Defendant, Nestle Purina PetCare Company, manufactures, distributes, markets, and sells pet foods. Relevant to this suit are two varieties of dog food they sell, Purina Pro Plan Adult Sensitive Skin & Stomach Salmon & Rice Formula and Purina Pro Plan Adult Sensitive Skin & Stomach Lamb & Oat Meal Formula. Defendant represents that these two products contain no corn, wheat, or soy. Plaintiff alleges that she paid a premium for these two products purportedly free of corn, wheat, and soy based on that representation. But Plaintiff alleges that, in reality, both Pro Plan formulas "contain significant amounts of wheat." Doc. [24] ¶ 4.

Plaintiff brought this putative class action asserting five counts: Breach of Express Warranty (Count I); Breach of Implied Warranty of Merchantability (Count II); Unjust

Enrichment (Count III); Missouri Merchandising Practices Act ("MMPA")[1] (Count IV); and Georgia Fair Business Practices Act ("GFBPA")[2] (Count V).  In the instant Motion, Defendant seeks to dismiss Plaintiff's First Amended Complaint in its entirety for numerous reasons.  Having subject matter jurisdiction to entertain this action under the Class Action Fairness Act, see 28 U.S.C. § 1332(d), the Court considers each of Defendant's arguments.  *See Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010) (discussing the motion to dismiss standard).

## II. Discussion

### a. *Standing*

Defendant first asserts that Plaintiff lacks standing to pursue her claims because she has not alleged a particularized, concrete injury, which would mean this action is not a case or controversy within the Court's power to hear.  *See* U.S. Const. art. III, § 2; *see also* Fed. R. Civ. P. 12(b)(1).  To establish she has standing, Plaintiff, as the party invoking the Court's jurisdiction, bears the burden of establishing she has a "personal stake" in the case sufficient to answer the question: "What's it to you?"  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  To answer that question in a way sufficient to establish standing, Plaintiff must show: (i) that she "suffered an injury in fact that is concrete, particularized, and actual or imminent"; (ii) that the injury likely was caused by Defendant; and (iii) that judicial relief likely would redress the injury.  *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Here, Defendant alleges that Plaintiff has failed to show the existence of any injury.  The Supreme Court has explained that an "injury in fact" is an "invasion of a legally protected interest" and must not only be "concrete and particularized" but also "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560–61.  Since this case is only at the motion to

---

[1] *See* Mo. Rev. Stat. §§ 407.010 *et seq.*
[2] *See* Ga. Code §§ 10-1-390 *et seq.*

dismiss stage, Plaintiff can succeed at establishing she has standing through "general factual allegations of injury resulting from the defendant's conduct." *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007) (quoting *Lujan*, 504 U.S. at 561). Plaintiff has done so here.

Plaintiff has alleged that dog food she purchased contained significant amounts of wheat, contrary to the packaging's claims. *See, e.g.*, Doc. [24] ¶ 4 (the two formulas at issue in this suit "contain significant amounts of wheat"); *id.* ¶ 15 ("both Pro Plan formulas contain *significant* amounts (not merely trace or detectable amounts) of wheat"); *id.* ¶ 18 (Plaintiff "did not receive the product [she] was promised because Defendant misrepresented the ingredients"); *id.* ¶ 40 (Plaintiff "purchased a product that contained ingredients that it was marketed and advertised not to contain"). Thus, her allegations *do* establish that "all or even most" of these products she purchased contained misrepresented ingredients. *See Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014). At this stage, those allegations were sufficient to allege an injury in fact. *Id.*; *see also Von Slomski v. Hain Celestial Grp., Inc.*, 8:13-cv-01757-AG-AN, 2014 WL 12771116, at *5 (C.D. Cal. June 10, 2014) (distinguishing *Wallace* because plaintiffs alleged all the teas contained pesticides "rather than merely alleging that some of the packages contain pesticides"); *In re Gen. Mills Glyphosate Litig.*, 0:16-cv-02869-MJD, 2017 WL 2983877, at *3 (D. Minn. July 12, 2017) (explaining case was "not like *Wallace*" since the plaintiffs "alleged that all Nature Valley Products contain glyphosate"). Therefore, Plaintiff has established her standing to bring this action at this stage.

      b.  *Deception and Injury*

Defendant next argues that Plaintiff failed to state a claim because she failed plausibly to allege that Defendant engage in a deceptive act or unfair practice and failed plausibly to allege injury or damage. As recited above, however, Plaintiff's First Amended Complaint, subject to

the provisions in Federal Rule of Civil Procedure 11(b), repeatedly alleges that Defendant's Pro Plan products at issue contain significant amounts of wheat though Defendant markets and labels them as having no wheat. Defendant's Motion discusses different kinds of cases, ones where only a "trace" amount of an ingredient is found. *See, e.g.*, Doc. [28] at 5–6 (referencing *trace* no fewer than nine times along with words like *residue*, *molecule*, and *negligible*). That simply is not what Plaintiff alleges regarding the Pro Plan products at issue in this case. Perhaps discovery will reveal Defendant's factual position is the more accurate one, but Defendant's position differs greatly from the one Plaintiff alleges. At this stage of the litigation, Plaintiff has the benefit of having her properly pleaded allegations taken as true, and Plaintiff plausibly has alleged deception and injury. Consequently, Defendant's Motion to dismiss on this ground will be denied.

   c. *Propriety of the MMPA Claim*

Next Defendant argues that the First Amended Complaint fails to allege a violation of the MMPA because Plaintiff does not allege an unlawful practice in connection with a sale or advertisement of any merchandise in or from Missouri. To run afoul of the MMPA, a practice "must involve trade or commerce 'in or from the state of Missouri.'" *Perras v. H & R Block*, 789 F.3d 914, 918 (8th Cir. 2015) (quoting *State ex rel. Nixon v. Estes*, 108 S.W.3d 795, 801 (Mo. Ct. App. 2003)); *see also* Mo. Rev. Stat. § 407.020.1. Twice now in cases where transactions took place outside of Missouri, the U.S. Court of Appeals for the Eighth Circuit has found that the MMPA did *not* apply. *Perras*, 789 F.3d at 918; *Hale v. Emerson Elec. Co.*, 942 F.3d 401, 404 (8th Cir. 2019) (per curiam).

In *Perras* the Eighth Circuit held that a putative class action against H & R Block for an allegedly fraudulent "compliance fee"—designed and implemented at H & R Block's Missouri

headquarters but charged to consumers through transaction that took place outside of Missouri—did not involve commerce in or from the state of Missouri. 789 F.3d at 918. Later, in *Hale*, the Eighth Circuit held that a class action against Emerson Electric Company ("Emerson") for allegedly deceptive advertising associated with a vacuum cleaner did not involve commerce in or from the state of Missouri because, even though Emerson made all marketing decisions regarding the vacuums in Missouri, every part of the challenged transaction took place in a class member's home state. 942 F.3d at 404.

Plaintiff has failed to distinguish this case from *Hale*. Here, Plaintiff, a resident and citizen of Georgia, "encountered the allegedly misleading advertising, purchased [the product], and ultimately w[as] disappointed with [it]," all in her home state of Georgia. *Id.*; *see also* Doc. [24] ¶ 29. Plaintiff argues that the MMPA applies because "Defendant was founded and headquartered in Missouri, where it designs, manufactures, distributes, labels, advertises, and sells" the products at issue. Doc. [31] at 9 (citing Doc. [24] ¶¶ 9, 11–12, 68).[3] But it is "not enough" when the "design of the advertisement" is the "only relevant action taking place in Missouri." *Hale*, 942 F.3d at 404. Like in *Hale*, here, "every part of the challenged transaction[s] took place" outside Missouri. *Id.* Plaintiff has not demonstrated how the facts she alleged in this case differ from those in *Hale* in any way that warrants a different result. Put another way, there are no more facts alleged here regarding the sale of Defendant's Pro Plan dog food to a party outside Missouri than were present in the sale of Emerson's vacuum cleaner to a party outside Missouri.[4]

---

[3] Plaintiff makes this argument in her brief, but the paragraphs cited in the First Amended Complaint do not allege that Defendant manufactures or labels the Pro Plan products at issue in Missouri. Doc. [24] ¶¶ 9, 11–12, 68. Thus, even assuming for the sake of argument that such allegations would be enough, such is not alleged to be the case here.

[4] The Court notes that the plaintiff in *Hale* did allege that Emerson "manufactured and marketed" the vacuum "from inside the State of Missouri." *See Hale v. Emerson Electric Co.*, 4:12-cv-00574-HEA, Doc. [1] ¶ 2 (E.D. Mo.

    d. *Standing for Injunctive Relief*

Next Defendant maintains that Plaintiff lacks standing to seek injunctive relief because she is now aware of Defendant's alleged deception and plausibly has not alleged a likelihood of future injury. Standing to seek injunctive relief "requires a showing that the plaintiff faces a threat of ongoing or future harm." *Park v. Forest Serv. of U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000). Plaintiff argues that her lone allegation that "she would consider buying" the Pro Plan products at issue if they "actually contained" no wheat provides her standing to seek injunctive relief. Doc. [24] ¶ 32; Doc. [31] at 10. But the Court concludes that her "some day" intention to "consider buying" again the products at issue is not enough. *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018); *see also Lujan*, 504 U.S. at 564.

Plaintiff is the master of her complaint, *Winfrey v. City of Forrest City, Ark.*, 882 F.3d 757, 758 (8th Cir. 2018), yet she did not allege she would buy or even that she desired to buy the product again, which is, if anything, the bare minimum. *See, e.g.*, *In re Gen. Mills Glyphosate Litig.*, 2017 WL 2983877, at *4 (finding standing to seek injunctive relief where plaintiffs alleged that they "would buy" the products if defendant eliminated glyphosate); *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 971 (9th Cir. 2018) (concluding that, though a "close question," an allegation that plaintiff desired to purchase items adequately alleged imminent or actual threat of future harm); *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 809 (S.D.N.Y. 2021) (finding allegation that plaintiff "would purchase" the product in the future *if* she "could trust the label" was insufficient to confer standing). Instead, Plaintiff alleged only that she would *consider* buying the item in the future. Doc. [24] ¶ 32. Even when drawing all reasonable

---

March 29, 2012). See also Brief of Appellees at 17, *Hale v. Emerson Electric Co.*, 942 F.3d 401 (8th Cir. 2019) (No. 18-1585), 2018 WL 3418813, at *17 ("Sales of the vacuums occurred in multiple states, however, all operations leading to the sale, including the design and manufacture, testing, decision-making, and marketing emanated from Missouri.").

inferences in Plaintiff's favor, the appropriate review at this stage, Plaintiff lacks standing to seek injunctive relief based on her allegations in the First Amended Complaint. *See Huskey v. Colgate-Palmolive Co.*, 486 F. Supp. 3d 1339, 1347 (E.D. Mo. 2020) (finding lack of standing to seek injunctive relief where complaint contained no allegations that plaintiffs intend to continue purchasing the product or purchase them in the future). Thus, the Court will dismiss all Plaintiff's claims for injunctive relief.

   e. *Breach of Warranty*

Plaintiff seems to agree that Georgia law applies to her claims for breach of warranty in this case. Doc. [31] at 11–13; Doc. [33] at 7–9.[5] But the parties disagree on how Georgia law applies to the facts alleged here. Defendant argues that Plaintiff's express and implied warranty claims fail as a matter of law because Plaintiff lacks privity with Defendant. The Court concludes that Plaintiff has pleaded sufficient facts to state a claim for breach of express and implied warranty under Georgia law at this early stage. *See, e.g.*, *Lee v. Mylan Inc.*, 806 F. Supp. 2d 1320, 1326 (M.D. Ga. 2011) ("If the manufacturer expressly warrants to the ultimate consumer that the product will perform in a certain way or that it meets particular standards, privity with that ultimate consumer is deemed to exist."); *Carder v. Graco Children's Prod., Inc.*, 2:20-cv-00137-LMM, 2021 WL 3909953, at *15 (N.D. Ga. Aug. 31, 2021) (declining to

---

[5] For whatever reason, Plaintiff's First Amended Complaint does not specify under what jurisdiction's law Plaintiff brings her various counts, aside from her two purely statutory counts. Nor does Plaintiff ever provide a choice of law analysis in her briefing on the instant Motion. On the briefing relevant to this section in Plaintiff's response briefing discussing the claims for breach of express and implied warranties, Plaintiff consistently cites cases applying Georgia law, though in one footnote in this section, she abruptly and without explanation cites cases applying Missouri substantive law. *See* Doc. [31] at 12 n.16. The Court takes Plaintiff's complete lack of argument on this fundamental matter and general citation to Georgia law (absent the aberration in the one footnote) as an acquiescence to Defendant's seemingly sound position that under Missouri's choice of law rules, Georgia's substantive law applies to these breach of warranty counts. *See Scheerer v. Hardee's Food Sys., Inc.*, 92 F.3d 702, 708 (8th Cir. 1996) (explaining that when jurisdiction is founded on diversity, district courts in Missouri "look to Missouri choice of law rules to determine which body of substantive law to apply" and explaining further that for both tort and contract claims, Missouri courts apply the "most significant relationship test"); *see also Smith v. Gen. Motors LLC*, 988 F.3d 873, 878 (6th Cir. 2021) (noting that it was "troubling" and "odd" that plaintiffs "failed to specify which jurisdiction's laws" would govern their multi-state class action suit).

dismiss breach of implied warranty claim under Georgia law where manufacturer made direct representations to the consumer); *see also* Ga. Code § 11-2-313 (providing sellers can create express warranties though a description of the goods); Ga. Code § 11-2-314(2) (setting an implied warranty of merchantability requiring, in part, that goods must "[c]onform to the promises or affirmations of fact made on the container or label if any"). Plaintiff's breach of express warranty (Count I) and breach of implied warranty of merchantability (Count II) survive.

      f. *Unjust Enrichment*

Like her breach of warranty claims, Plaintiff does not discuss what jurisdiction's substantive law applies to her claim for unjust enrichment. *See supra*, n.5. Nor did Plaintiff meaningfully respond to Defendant's argument that Georgia's substantive law applies to this claim. Rather, Plaintiff cited to what "courts in this district routinely find" regarding unjust enrichment. Doc. [31] at 14. But what courts in this District do is of little help if the courts are applying the substantive law of a different jurisdiction than the substantive law at issue here. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("There is no federal general common law."). For example, Plaintiff cites *Early v. Henry Thayer Co.*, 4:20-cv-1678-RLW, 2021 WL 3089025 (E.D. Mo. July 22, 2021), but there the court was applying the Missouri substantive law of unjust enrichment to the claims of a Missouri citizen who purchased the allegedly deceptive item at stores in Missouri. That case, and the others Plaintiff cites, are of no use to this case without first establishing that Missouri's substantive law of unjust enrichment applies to this case, which Plaintiff, a citizen of Georgia who purchased the products at issue in this case in Georgia, has not even attempted to do.

Given that Plaintiff is a citizen of Georgia and purchased the products at issue in Georgia, Defendant's unanswered argument that Georgia has the most significant relationship, and that its

substantive law therefore applies to Plaintiff's unjust enrichment claims, is well taken. *See Scheerer v. Hardee's Food Sys., Inc.*, 92 F.3d 702, 708 (8th Cir. 1996) (explaining Missouri courts apply the "most significant relationship test" for both tort and contract claims); *see also, e.g.*, *Flynn v. CTB, Inc.*, 1:12-cv-68-SNLJ, 2013 WL 28244, at *6 (E.D. Mo. Jan. 2, 2013) (citing Restatement (Second) of Conflict of Laws § 221 (1971)). Plaintiff failed to respond to Defendant's argument that Georgia law forecloses Plaintiff's unjust enrichment claim because Plaintiff did not confer a direct benefit on Defendant.[6] *See Engram v. Engram*, 463 S.E.2d 12, 15 (Ga. 1995) (noting unjust enrichment under Georgia law requires that "the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment"); *see also, e.g.*, *Scott v. Mamari Corp.*, 530 S.E.2d 208, 212 (Ga. Ct. App. 2000) (finding unjust enrichment claim failed where the defendants did not "receive[ ] the direct benefit of [the plaintiff's] labor" and "any indirect benefit . . . was only the natural by-product of all work performed" on the project); *Archer v. Holmes*, 1:17-cv-2051-TWT, 2018 WL 534475, at *5 (N.D. Ga. Jan. 23, 2018) ("But in Georgia, unjust enrichment claims lie only in those situations where a defendant has received a direct benefit from a plaintiff.") (citing *Peterson v. Aaron's, Inc.*, 1:14-cv-1919-TWT, 2015 WL 5479877, at *2 (N.D. Ga. Sept. 16, 2015) (concluding that indirect benefits are insufficient to sustain a claim for unjust enrichment)). With no argument from Plaintiff to the contrary, the Court will dismiss her unjust enrichment claim, Count III.

    g. *GFBPA Class*

Defendant next argues that Plaintiff cannot assert GFBPA claims on behalf of a Georgia class because the GFBPA prohibits individual litigants from bringing suit "in a representative capacity." Ga. Code § 10-1-399. Though Georgia's statute seemingly prohibits a GFBPA claim

---

[6] Plaintiff alleges she purchased Defendant's products from various third-party retailers, not directly from Defendant itself. Doc. [24] ¶ 29.

- 9 -

from being brought in a representative capacity, Federal Rule of Civil Procedure 23 allows members of a class to sue "as representative parties on behalf of all members." Fed. R. Civ. P. 23. The question then is which provision is displaced in this case, the statute that would prohibit it or the Federal Rule that would allow it, and the answer is not patently clear. *Compare Amato v. Subaru of Am., Inc.*, 1:18-cv-16118, 2021 WL 2154976, at *5 (D.N.J. May 27, 2021) (concluding Rule 23 permitted plaintiff to bring his GFBPA claim as a class claim), *with Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 798 (E.D. Mich. 2019) (concluding the class action prohibitions set forth in the GFBPA are not displaced by Rule 23 such that plaintiff was not permitted to bring his GFBPA claim as a class claim); *see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 437 (2010) (concluding, in a fractured judgment, that, in diversity suits, Rule 23 preempts the application of a New York law that precluded a suit to recover a "penalty" from proceeding as a class action).

Because some of Plaintiff's other class claims survive this Motion to Dismiss and will proceed, and Plaintiff's individual claim under the GFBPA also will survive, the Court will leave the resolution of this conflicted issue for another day when the parties can provide focused briefing on this issue.

      h.  *Nationwide Class Allegations*

Lastly, Defendant argues that Plaintiff cannot assert claims on behalf of a nationwide class, and, therefore, the Court should strike the First Amended Complaint's nationwide class allegations. *See Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021) (noting that a district court may grant a motion to strike class action allegations prior to the filing of a motion for class action certification if it is "apparent from the pleadings that the class cannot be certified" (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and

Procedure § 1380 (3d ed.))); *McCrary v. Stifel, Nicolaus & Co.*, 687 F.3d 1052, 1059 (8th Cir. 2012) ("[C]lass claims that fail to meet the requirements of Rule 23 may be properly dismissed by granting a Rule 12(b)(6) motion.").

Here, Defendant makes a compelling argument that nationwide class certification on any of Plaintiff's claims would be impossible because she could not prove predominance given that an individualized choice of law analysis would need to be applied to each individual plaintiff's claim. *See In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 822–23 (1985)). That is, each plaintiff's claim in this action would need to be analyzed under Missouri's choice of law analysis. *See Scheerer*, 92 F.3d at 708. Applying Missouri's choice of law rules to each plaintiff's claims would lead to many different states' substantive law applying to the underlying claims. These substantive laws vary from state to state. *See, e.g.*, *Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505, 519 (D. Minn. 2014) (noting "the laws of the 50 states differ substantially on many questions, including how 'unjust' the retention of a benefit must be for an unjust-enrichment claim to succeed"); *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 726 (5th Cir. 2007) (noting the "numerous variations in the substantive laws of express and implied warranty" among different jurisdictions).

Nevertheless, the oft-repeated maxim regarding striking a party's pleading is true; it "is an extreme and disfavored measure." *See, e.g.*, *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007); *Donelson*, 999 F.3d at 1092; *accord Doyel v. McDonald's Corp.*, 4:08-cv-1198-CAS, 2009 WL 350627, at *5 (E.D. Mo. Feb. 10, 2009) ("Striking plaintiffs' class action allegations prior to discovery . . . is a rare remedy[.]"). So, while the Court has "serious doubts," to put it lightly, that Plaintiff will be able to satisfy the predominance requirement of a nationwide class, the Court also is hesitant to strike the nationwide class allegations at this the

earliest possible stage. *See Huskey*, 486 F. Supp. 3d at 1351. The Court finds that the decision as to the survival of the nationwide class allegations in this case should be made after allowing Plaintiff to conduct *some* discovery or on motion to the Court wherein the parties can provide additional briefing to explain whether the prerequisites of Rule 23 can be satisfied. *See id.* "Given the severity of striking class allegations at this early stage of the litigation, the Court—out of caution—will decline to strike the nationwide class allegations at this time." *Id.*

## CONCLUSION

For the reasons explained herein, the Court will grant Defendant's Motion and dismiss the unjust enrichment claim (Count III) and the Missouri Merchandising Practices Act claim (Count IV). Further, the Court will grant Defendant's Motion and dismiss all Plaintiff's claims for injunctive relief. The Court will deny the Motion in all other respects.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, Doc. [27], is **GRANTED** in part and **DENIED** in part consistent with this Memorandum and Order.

Dated this 29th day of April, 2022.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE